## JOHN TAFT ROSEBUROUGH V. STATE.

No. 26, 249. April 22, 1953.
State's Motion for Rehearing Denied (Without
Written Opinion) June 10, 1953.

*David J. Morris,* Brownwood, for appellant.

*Justin A. Kever,* District Attorney, *Earl W. Smith,* former District Attorney, San Angelo, *Bill Allcorn,* District Attorney, Brownwood, and *Wesley Dice,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The offense is rape; the punishment, 99 years in the penitentiary.

The state proved conclusively that the offense of rape was committed upon a young mother in her apartment in San Angelo.

The victim was unable to identify her assailant who entered the apartment by removing the window screen. She described her attacker as a Negro from his voice, body odor and the feel of his hair, but was unable to otherwise describe him.

Appellant was connected with the crime only by his written confession admitted in evidence over his objection.

We find it necessary to discuss only the testimony relating to the admissibility of the confession and the ruling of the court in regard to appellant's testimony before the jury in regard to the voluntary character of the confession.

Appellant's objection was, in part, as follows:

"because this defendant was arrested on December 19, 1951, about 12 o'clock, and that he was thereafter beaten by one Hinkle Boyd, and the said Hinkle Boyd told him that he would kill him, and the defendant was thereby put in fear, and that he did make said statement under coercion, and signed the same under coercion, and it is therefore not admissible, because it was not a voluntary statement, but was an involuntary statement under Article 727 of the Code of Criminal Procedure. The defendant says it was further in violation of Article 727 in that (1) H. D. Afflect, who had been employed by the relatives of John Taft Roseburough, the defendant in this case, to go down and to try to find out what he was being held under arrest for; that said H. D. Afflect, went down, and instead of doing what he had been employed to do, he took this defendant and grilled him about eight hours; that he told the boy that if he would just make a confession that he would get him out immediately—that he would immediately get him out of his trouble; that after long persuasion the said H. D. Afflect, led the boy to believe, and persuaded him to believe, that he could get him out; and we say that those promises made by H. D. Afflect were made in conjunction with the constabulary and the District Attorney, and the City Police in San Angelo, and the Sheriff's department of Tom Green County, and all prevented him from procuring an attorney, and overruled him, and induced him to make the statement, and that the statement so made by this defendant at that time was, under no state of facts, a voluntary statement under Aricle 727, and to admit this testimony would be admitting testimony procured by acts that are involuntary—that are in violation of the law."

In the absence of the jury, the court heard evidence offered by the state and by appellant, overruled the objection and admitted the confession in evidence with the statement that the issue would be submitted to the jury.

In the hearing before the court after detailing the abuse to which he claimed to have been subjected by Hinkle Boyd and other officers following his arrest on the night of December 19, 1951, and the efforts he claimed were made by Hinkle Boyd and other officers to obtain a confession from him, appellant testified that he was visited by his grandmother in the early morning of December 23. She told him that a man was coming to see him who was a friend and that he should tell him the truth

"about where I was;" that H. D. Affleck then came to see him that evening wearing a pistol and asked him to tell the truth.

He related what he claimed to have told Affleck as to his whereabouts on the night of his arrest and Affleck left saying he would check up on what he had said and return the next day.

Continuing his testimony, appellant said that Affleck returned the next day and accused appellant of lying to him, and again left promising to help.

Affleck soon returned and questioned appellant and asked him if he could "put the finger on the man who did it" and appellant said he did not know. Affleck then said "Junior, if you don't know who did it, then you did it" adding "If that's all you are going to say, I will have to tell your mother and father there is nothing to be done for you." Also appellant testified Affleck then told him "as long as I said I didn't do it, there was no way for him to help me or get me out." This conversation was shown to have covered some seven hours and ended a short time prior to the signing of the first confession.

Appellant testified also as to Affleck "* * * I thought he was a friend. I thought he worked for the City, because he had a gun in his pocket; and I thought he would get me out. I thought he could do just what he said he could do. I saw him again that same evening," and "I signed that statement because they told me that if I didn't sign it they would kill me; and this man, Mr. Affleck told me that if I would say that I did it, he would get me out of jail. He said he couldn't promise me anything if I didn't sign it because they had said they would kill me if I didn't, and I was in fear of my life.

"I signed the second confession for them because they said if I did not say I did it, they would kill me, and I signed it too, because this man said if I would say I did it, that he would get me out of it * * *.

"I signed the second confession because the man said I could get out if I said I did it—if I said I did the crime I could get out."

After the confession had been offered in evidence, appellant testified as a witness in his own behalf before the jury and again denied that the confession was true or that it was voluntarily

made. He testified again as to the conduct of Officer Hinkle Boyd and others claiming that he was kicked and slapped and was threatened with death if he did not admit the rape.

He testified before the jury that his grandmother told him to make sure that he told the "friend" who would come to see him the truth, and that the man who it later developed was H. D. Affleck came to the jail and took him out of his cell and to another floor. He was then asked to relate the conversation he had with Affleck at that time, to which question the state's objection was sustained. Appellant excepted to the ruling and in connection therewith renewed his objection to the admission of the confession and tendered the testimony "adduced in the absence of the jury pertaining to that subject."

Again, appellant was asked "Tell the jury and the court why you made that confession," and appellant answered. "I made that confession because they said if I didn't say I did it they would kill me, and because Mr. Affleck told me * * *"

The state's objection "to what Mr. Affleck told him" was sustained, and appellant excepted.

Because of this ruling of the court, appellant was not permitted to include in his version of the making and signing of the confession, the part which he claimed Affleck played in the matter as related by him in the absence of the jury.

It seems that the state's objection and the trial court's ruling was upon the theory that Affleck was not a person in authority, and therefore his promise of aid would be immaterial on the issue of the voluntary character of the confession.

Appellant testified that Affleck had a pistol and he thought he "worked for the City." His conduct shown by the record in conversing with appellant over a long period of time while officers were in an adjoining cell out of sight; his familiarity with the communication system by which conversation at the county jail might be heard at the police headquarters of the city were sufficient to present a fact question as to Affleck's position in the matter if not to show that he was acting with the officers and not in behalf of appellant.

Further, the testimony as to Affleck's activity and conversation with appellant was admissible on the question of the voluntary character of the confession based upon appellant's testi-

mony as to the conduct of the officers he claimed extorted the confession by threats and abuse.

That appellant's version of the matter may not appeal to us or may not have appealed to the trial court as worthy of belief is of no moment. The question of the voluntary character of the confession was one of fact for the jury, and appellant's version of the entire matter should have been admitted before the jury.

The trial court erred in excluding appellant's testimony as to Affleck's part in obtaining the confession.

Judgment of the trial court is reversed and the cause remanded.

Opinion approved by the court.