MAURICE SAMPSON V. STATE

No. 26,604. November 25, 1953.
Appellant's Motion for Rehearing Denied February 17, 1954.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) March 17, 1954.
Order Directing Issuance of Mandate Filed June 21, 1954.

*Henry E. Doyle, Francis L. Williams* (*Bernard A. Golding*, of Counsel) all of Houston, for appellant.

*William H. Scott,* District Attorney, *King C. Haynie,* Assistant District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, death.

It was shown that Mrs. McCasland, while working in a flower shop alone, met her death on January 6, 1953, between 3:00 and 3:35 p.m. as the result of a gunshot wound. The money from the flower shop was taken. There is some evidence that she received other wounds than those caused by the firing of a weapon.

The appellant and his co-indictee were arrested on suspicion of another offense on January 7. At 2:00 a.m. on January 12 appellant confessed that he and his co-indictee had committed the murder.

Appellant's confession recited that some three months prior to the homicide he had visited in the home of his cousin at Richmond in Fort Bend County, and while there he had stolen a .22 caliber pistol; that on January 6 he had taken his pistol and gone to the home of Willie Gilbert, and they had discussed robbing someone; that the two of them had gone in Willie's automobile back to appellant's home, where they had gotten a stick

with a chunk of iron on the end of it, which they agreed that Willie was to use in the robbery; that they drove by a flower shop and saw that there was no one there but a woman; that as they entered appellant asked for change for a $5.00 bill, and when the woman turned for the change Willie struck her with the iron on the end of the stick; that he hit her again, and she fell to the floor; whereupon, appellant walked over to her and fired a bullet through her head at close range. After this, appellant got the money out of the box on the desk, and the two of them left the flower shop and divided the money. The confession continues to relate that he carried the stick back home and put it under the bed; that he carried the pistol down to the end of Paul Quinn Street and threw it into the woods; that thereafter he told officers about it, and they had gone and gotten the stick and exhibited it to him.

Isiah Ford, a resident of Richmond in Fort Bend County, testified that appellant was his wife's cousin-in-law; that appellant had visited in his home sometime before the date charged in the indictment; and that after the appellant left he looked for his .22 caliber pistol and found that it was gone.

Sheriff Kern testified that he went to the scene of the homicide, found a bullet or slug on the floor, and from his observations of the wounds on the body of deceased instituted a search for a gun and a club; that he went to appellant's home and found a club with an iron nut on the end of it. Both the bullet and club were brought to the Texas Department of Public Safety in Austin for testing. Experts from that department testified that the bullet or slug had come from a .22 caliber firearm and that the club had human blood on the iron end of it. The pistol was never found, even though the area of the bayou was searched.

Appellant's defense was that of alibi, and he was in a measure supported by some of his witnesses.

Unless the confession was inadmissible as a matter of law, the evidence is sufficient to support the conviction.

We shall attempt to apply the undisputed evidence rule as adopted by this court and the Supreme Court of the United States.

These facts, which would raise a question as to the admissibility of the confession, are undisputed:

1. Appellant was arrested without a warrant and was not taken before a magistrate following his arrest and prior to the making of the confession.

2. Appellant was carried by the officers out of the jail in an effort to locate the pistol used in the murder.

3. Appellant did not receive any visitors while in jail prior to the making of the confession.

The appellant's testimony did not raise the issue of long and uninterrupted questioning. He claimed only brutality, which he said was inflicted upon him right up until shortly before he confessed. Appellant testified that the officers hit him over the head with a piece of pipe and a hose. Each of the officers named by the appellant denied that he struck the appellant at any time while he was in their custody and that he had inflicted any brutality upon him in any manner.

It is further undisputed that the appellant was taken immediately after he confessed to the hospital, where he was given a physical examination by a doctor. The doctor testified that he saw no bruises or evidence of any violence having been inflicted upon the appellant and that he examined his head and body thoroughly. The doctor testified that he found only one break in the skin of appellant and that was a small ulcer on his left shin. Appellant offered a witness who saw him shortly after the confession was made and who testified that he saw some scratches on his legs just above the ankle.

Mr. Estes, a newspaper reporter, testified without objection that he was present when a search for the pistol was in progress and that the appellant, who was at the scene of the search, told him that he thought the pistol had hit a tree when he threw it away and might have fallen in the bayou, and was also present later when the appellant made the confession; that he witnessed the same; that he read each sentence of the confession to the appellant, asked him if he understood the meaning of the sentence, and if it was correct; and that the appellant had answered in the affirmative to each question. Estes testified that he saw no marks of violence or injuries on the person of the appellant at that time. The two other men present when the confession was made had not been active in the investigation of the case against the appellant. One of them, Mr. Albertson, testified that he questioned the appellant specifically about mistreatment and

that the appellant told him "that he felt better by going ahead and admitting it."

We return to the enumerated undisputed facts:

1. Appellant was arrested without a warrant and was not carried forthwith before a magistrate.

It has been the consistent holding of this court, and of the Supreme Court of the United States in passing on state court cases, that the rule in McNabb v. U.S., 87 L. Ed. 819, does not apply and that the failure to take an accused forthwith before a magistrate does not in itself standing alone vitiate a confession. Dimery v. State, 156 Texas Cr. Rep. 197, 240 S.W. 2d 293; Gallegos v. Nebraska, 242 U.S. 55, 72 S. Ct. 141; Shook v. State, 156 Texas Cr. Rep. 515, 244 S.W. 2d 220; Leviness v. State, 157 Texas Cr. Rep. 160, 247 S.W. 2d 115; Golemon v. State, 157 Texas Cr. Rep. 534, 247 S.W. 2d 119 (writ of certiorari denied); Gasway v. State, 157 Texas Cr. Rep. 647, 248 S.W. 2d 942 (writ of certiorari denied); Paris v. State, 157 Texas Cr. Rep. 580, 249 S.W. 2d 217 (writ of certiorari denied); Hulen v. State, 157 Texas Cr. Rep. 507, 250 S.W. 2d 211; Stroble v. California, 343 U.S. 181, 72 S. Ct. 599, 96 L. Ed. 872.

2. Appellant was taken out of jail by the officers.

In connection with this fact, it is important to note that it is also undisputed that there were present at such time at least two newspaper reporters, one of whom talked to the appellant out of the hearing of the officers, at which time the appellant told the reporter that no brutality had been threatened or inflicted upon him by the officers.

3. Appellant received no visitors during his confinement in jail.

Jailer McAlpine testified that he did not think the appellant had any visitors, but supposed "that there had been none there to see him."

Appellant's aunt testified that she had been to the jail and had been denied permission to see the appellant. She did not name or describe the officer who she claims refused to let her see the appellant and did not give the dates or the hours of such visits.

Had the proof shown that the appellant was denied the right of consultation with an attorney or members of his family or that such parties made inquiries and were not told where he was confined, such conduct on the part of those confining him would raise a serious question concerning due process.

It will be noted that there was no effort to prove in the case before us that appellant was held incommunicado or confined in an unusual place of confinement or that his friends and relatives had inquired and were unable to learn where he was confined.

To reverse this conviction upon the unsupported testimony of a relative, who was so indefinite in her testimony as to preclude the state from contradicting it, would place in the hands of every accused the cause of a reversal whenever no one came to see him while he was in jail.

We have concluded that the confession was not shown to be inadmissible as a matter of law, and the trial court did not err in admitting the same and having the jury pass upon its voluntary character.

Appellant's objection to the introduction into evidence of the stick or club is presented in a unique manner and requires a rather extended discussion. Sheriff Kern testified without objection that he went to the home occupied by appellant and W. B. Sampson; that he searched the house with the permission of W. B. Sampson and found the club. On cross-examination of the sheriff, appellant did not question him concerning the securing of permission, but rather sought to prove that the sheriff had a search warrant and that the warrant was invalid. When the state offered the club into evidence through another witness, the appellant objected on the grounds that the search was illegal, because the appellant was under an illegal arrest at the time the search was made and that the search warrant which had been issued was issued only for a search for a .22 pistol. The court admitted the club on the theory that permission had been granted the officers by W. B. Sampson and so stated in his ruling.

Appellant called Officer Henry the affiant on the affidavit for the search warrant and sought to prove that the search warrant was invalid as a matter of law.

The appellant then called W. B. Sampson, who testified that he had not given any of the officers permission to search. On cross-examination, W. B. Sampson admitted that he had put his mark to a statement giving permission to search.

The state proved in rejoinder that sometime after the search W. B. Sampson had given a deputy sheriff a written statement in which he stated, in part:

" . . . and then showed me a search warrant that they had to search my house. I told them officers that I was unable to read or write and I then gave them permission to search the house and all outhouses, I told them that they didn't need a search warrant, and to go ahead and look for what they wanted."

We need not pass upon the legality of the search warrant if W. B. Sampson gave permission for the search. An issue of fact was raised, as we have shown, and the court properly charged the jury that they were not to consider the stick or club unless they first found that W. B. Sampson had invited the sheriff in and told him that he did not need a search warrant.

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Appellant urges that we should apply the law as stated in Hernandez v. State, 137 Texas Cr. Rep. 343, 129 S.W. 2d 301, wherein this court said that if the officer is armed with a defective search warrant and the accused says "all right, go ahead" consent will not be inferred.

In our original opinion we expressed no conclusion as to the validity or invalidity of the search warrant.

It was sufficient in form, as was the affidavit upon which it was issued by the magistrate. It was attacked through the testimony of the affiant who denied that he had sworn that the pistol which was the object of the search was stolen from him. He testified that the pistol sought was one with which a murder had been committed and the allegation in the affidavit which he admittedly executed, to the effect that it had been stolen from him, was not correct.

The attack, therefore, is as to the truth of the averments of the affidavit.

In Hernandez v. State, 158 Texas Cr. Rep. 296, 255 S.W. 2d 219, we held that a trial court may not go behind the affidavit and search warrant to determine the falsity of facts therein in order to invalidate a search warrant regular on its face. See also Elms v. State, 114 Texas Cr. Rep 642, 26 S.W. 2d 211; Jenkins v. State, 116 Texas Cr. Rep. 374, 32 S.W. 2d 848; Piper v. State, 34 S.W. 2d 283; Pond v. State, 119 Texas Cr. Rep. 306, 45 S.W. 2d 962; Harkey v. State, 142 Texas Cr. Rep. 32, 150 S.W. 2d 808.

The same rule applies in civil cases. See Coleman County Country Club v. State, 236 S.W. 2d 558, writ refused.

Aside from the question of consent and the sufficiency of the search warrant, the testimony of appellant and his witness W. B. Sampson was to the effect that the club in evidence was the club which was under the bed in the Sampson home.

We remain convinced that reversible error is not shown in the admission of the club in evidence.

We have re-examined the record in the light of appellant's motion and remain convinced that the issue of the voluntary character of the confession was for the jury and that the confession was not inadmissible as a matter of law.

Appellant's motion for rehearing is overruled.