JUNIOR LEE WILLIAMS V. STATE

No. 28,544. November 21, 1956.
Appellant's Motion for Rehearing Overruled
January 30, 1957.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) February 27, 1957.

*Dent, Ford, King & Wickliff,* by *Thos. H. Dent,* Galveston, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is rape; the punishment, death.

This is the second trial for the instant offense. The reversal of the prior case was predicated upon the court's failure to change the venue and is reported in 162 Texas Cr. Rep. 202, 283 S.W. 2d 239. This trial was held in Wharton County on a change of venue from Matagorda County with no protest from the appellant.

Mrs. Bruegen testified that the prosecutrix, her 14-year-old cousin, was spending the night in her home on the date charged in the indictment; she awoke at approximately 1:20 A.M. to give her baby its bottle, and as she entered the kitchen she saw a brown and white checked coat lying on the floor and observed that the back door was open. She stated that she then heard a moan coming from the room in which the prosecutrix was sleeping; when she turned on the light she saw a man on top of prosecutrix, and screamed; that the appellant, who had a handkerchief over part of his face, lay there and looked at her for a while and then got up and left the house. She stated that after he left the coat was missing and the back door was closed. She immediately called the police and discovered that the prosecutrix was unconscious and a khaki cap was lying on the floor near the couch on which she had been sleeping. She gave the officers a description of the appellant, delivered the cap to them, and identified the appellant, after a mask similar to the one he had worn was placed over his face, when he was brought to the hospital by the officers a short while thereafter.

The prosecutrix remembered nothing save that she had been choked into insensibility and spent ten days in the hospital.

The officers testified that they found the prosecutrix unconscious and lying in a pool of blood which emanated from the region of her sexual parts, that after receiving a description of the appellant and his cap they went in search of two men who fit the description, one of whom was the appellant.

Sheriff Cole stated that he and another officer went to the appellant's parents' home and were met at the door by his mother, that he asked if the appellant was there, that his mother asked what he had done, that he replied he wanted to talk to him, and that she told them to "come on in."

The sheriff stated that the appellant was in bed dressed in his shorts which had blood all down the front of them, that he told the appellant to dress and come with him, that the appellant put on clothes that were lying near the bed, and as they prepared to leave picked up a jacket and brought it with him. This jacket and the cap were introduced in evidence and were identified by Mrs. Bruegen at the trial as being similar to those she had seen on the night in question.

Sheriff Cole stated that he carried the appellant to his office in the jail and a few minutes thereafter carried the appel-

lant before a magistrate, swore out a complaint, and secured a warrant for his arrest. Justice of the Peace Ward corroborated the sheriff's testimony in this respect.

The sheriff, Chief of Police McWhorter, Judge Ward, Mr. Peden, the county attorney, and another officer questioned the appellant there in the jail. None of the witnesses is definite as to the time the confession was signed. Taking their testimony all together, including that of the appellant, it must have been signed within three hours after their arrival at the jail. The confession itself is unequivocal and admits penetration.

We digress here a moment to develop the testimony of Dr. Barbour, who stated that he was summoned to the hospital during the early morning hours and there examined the prosecutrix, whom he found to be unconscious as the result of having been choked. He stated he found blood all over her buttocks and vulva, a severe laceration of the hymen, and a long laceration, together with male sperm, in the posterior portion of the vagina, which caused him to believe that she had been ravished. He stated that he saw the appellant twice that night, that he observed what appeared to be blood stains on his pants, and that he later gave him a complete examination at the hospital and found no bruises or marks upon his body and observed no indication of intoxication.

We return to the confession and the disposition of the appellant following the making of the same.

Justice of the Peace Ward testified that he and the sheriff talked to the appellant for a while and, after having been warned, he confessed to them orally; that he called for Chief McWhorter who was a better typist and that the chief again warned the appellant; that he asked the appellant if he wanted a lawyer and he said "no" and the confession was then reduced to writing in the presence of the others named earlier, read to the appellant, signed and witnessed.

After the confession had been executed and before sunrise, the appellant was carried to the Wharton County jail in the adjoining county. The sheriff explains this move by saying that he did not know what the reaction of the people might be and he sent him to Wharton County for safekeeping. The sheriff denied the authenticity of the newspaper stories, which was one of the grounds for the reversal of this prior conviction, in which it was reported that a crowd had gathered at the jail, one of

whom was bearing arms, and denied that he had said at that time, "It looked bad for a while." In the prior opinion, we were interested only in whether or not the jurors became disqualified to serve by having read the newsstory. In the case at bar, we are concerned whether or not the incident occurred and, if so, whether it had any effect upon the appellant who confessed.

We now come to the appellant's defense. His mother testified that the appellant was at home in bed at the time the rape occurred; she stated that the sheriff presented himself at her door and asked for the appellant and then entered and woke him up, and that as they were leaving one of the officers took the appellant's coat with him.

The appellant testified and described three incidents which caused him to confess. It is impossible to tell from his testimony the sequence of these events. He states that he was carried out in the country about six miles, that during the trip the handcuffs were tightened around his wrists, that he was required to stand in front of an automobile's lights while his picture was taken, and that he was then returned to jail where his wrists were bathed in cold water until the swelling was reduced. He states that while at the jail one of the officers hit him twice with his fists and cursed him. He states that a crowd had gathered around the jail, that some man came in the jail armed with a shotgun and the officers told the man that the appellant was not there and instructed him to leave, and that at one stage of the questioning the sheriff had told him that he would "let the people get me" and at another time someone told him that they were going to put him out on the courthouse lawn. He stated finally, "* * * I figured out and thought up a funny statement, I said, 'Maybe if I think of it and give it to them, maybe they won't bother me,' and I said, 'Go ahead and get your typewriter, I will tell you all about it.' "

Appellant testified that he did not know how the blood had gotten on his shorts and clothes.

Several witnesses for the appellant testified that he had left a place where they had been gambling at one o'clock A.M. on his way home.

Each of the persons present on the night in question denied the trip to the country, denied that anyone hit the appellant, and denied the presence of or any reference to a mob or that any man had entered the jail with a shotgun looking for the

appellant or that anyone had threatened to turn the appellant over to anyone else. The nearest the appellant came to supporting his testimony about a crowd of people around the jail was an admission by one witness that "there were a few men out in the street later on that night."

If a crowd of people had assembled at the jail prior to the time he confessed, it would appear that proof of such fact would have been readily available to the appellant.

Since the issue as to the crowd, as well as the other issues, was fully controverted, there remained no undisputed evidence which renders the confession inadmissible.

It has long been the rule in the Supreme Court of the United States and in this court that it is only when there is undisputed evidence which would render the confession inadmissible that the same becomes inadmissible as a matter of law. Linsenba v. Calif., 314 U.S. 219, 62 Sup. Ct. 620, 86 L. ed. 166; Lyons v. Okla., 322 U.S. 596, 64 Sup. Ct. 202, 88 L. ed. 1431; Petrey v. State, 158 Texas Cr. Rep. 658, 258 S.W. 2d 808; Sampson v. State, 160 Texas Cr. Rep. 302, 268 S.W. 2d 661; Parsons v. State, 160 Texas Cr. Rep. 387, 271 S.W. 2d 643 (cert. den. 348 U.S. 837, 99 L. ed. 660, 75 Sup. Ct. 36).

The appellant presented a motion to suppress the confession and the introduction into evidence of the clothes worn by appellant. Such a motion is not recognized procedure in this jurisdiction. Dominguez v. State, 275 S.W. 2d 677, and Raymond v. State, 106 Texas Cr. Rep. 147, 291 S.W. 251.

He next complains of the introduction of the jacket into evidence. As will be seen from a statement of the facts herein, the sheriff testified that the appellant voluntarily brought the jacket with him, and the appellant's mother testified that the officers seized it. The court in his charge told the jury that they might not consider the jacket as evidence unless they believed that the appellant carried the same with him or believed that his mother invited the officers into the house at the time they came for the appellant. Since both of these issues of fact were controverted, we think the court properly submitted them to the jury for determination.

In Ellis v. State, 130 Texas Cr. Rep. 220, 93 S.W. 2d 438, this court cited with approval the case of Commonwealth v. Gray, 249 S.W. 769, wherein it was held that the consent of the

accused's mother, with whom he was living, authorized the search of the room where he resided.

The appellant next complains of the introduction of the cap found at the scene of the rape on the ground that it was never positively identified as being his property.

Chief McWhorter testified that the moment he saw the cap he went in search of the appellant. He stated that he had had the appellant under strict scrutiny during a period of time just prior to the day charged in the indictment and had noticed the appellant wearing the cap introduced in evidence, or one similar to it, almost every day. Other officers testified that as soon as they saw the cap and heard the description of the intruder the appellant became a suspect for them.

The appellant denied that the cap was his. The cap was there at the scene of the crime and was clearly admissible as a circumstance of the crime. None of the appellant's rights was violated when it was introduced in evidence. If the state was unable to link it to the appellant, then no injury resulted to him. If they were able to establish that it was his, then the jury were authorized to consider it as evidence against him.

In the famous case of Commonwealth v. Sacco, 151 N.E. 839, a cap found near the scene of the crime, which the state contended was worn by the accused, was held admissible even though it could not be positively identified as having belonged to the accused.

Appellant further contends that the court erred in refusing to declare a mistrial after the district attorney repeatedly referred to the prosecuting witness as "little girl." The record discloses that she was 14 years old at the time. The record does not disclose the state of her physical development. For all we know, she may indeed have been small. At any rate, the jury saw her, and we are unable to see how the appellant was injured by the use of the term.

The next contention relates to the testimony of Dr. Barbour in which he stated that the appellant's clothes appeared to have blood on them. It is appellant's contention that, since a chemical analysis was not made, such testimony was not admissible. With this contention, we cannot agree. Surely, the doctor and the sheriff were well qualified to give such an opinion.

Appellant contends that the court erred in failing to instruct a verdict of not guilty because the state had failed to establish penetration. While it is true that neither the prosecutrix nor Mrs. Bruegen testified as to penetration, we have concluded that the confession and the doctor's testimony were amply sufficient to establish this element of the crime.

Appellant's contentions that his constitutional rights were violated have been carefully studied and are overruled. We do not have here a case of failure to take the accused before a magistrate nor was there any long and uninterrupted questioning. The appellant was seen in the commission of a capital felony and hurriedly left the scene; such fact was reported to the officers who began a search for him; they went to his home, where they found him; he was then, within a matter of minutes, carried before a magistrate; following this, he was questioned from one to three hours, depending upon the testimony, and he then confessed. At the close of the case, there were no undisputed facts which would render the confession inadmissible as a matter of law. The question of the voluntary nature of the confession was submitted to the jury by the court in his charge.

Finding the facts sufficient to support the conviction and no reversible error appearing, the judgment of the trial court is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Judge.

Appellant complains of our failure to discuss his contention that his arrest at his mother's home was illegal.

The officers were not trespassers because they had on invitation legally entered the house. Their testimony as to the facts observed and discovered while in the house was admissible in evidence. The invitation to enter the house makes it unnecessary to determine the legality of the arrest.

We have re-examined the record in the light of appellant's motion and his original brief.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

Opinion approved by the Court.