Junior Lee **WILLIAMS**

v.

**H. E. MOORE, Warden, Texas Department of Corrections.**

No. 17272.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1959.

Rehearing Denied Feb. 5, 1959.

Thomas H. Dent, Galveston, Tex., for appellant.

B. H. Timmins, Jr., and Linward Shivers, Asst. Attys. Gen., Will Wilson, Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment declining to grant the writ of habeas corpus or to enter a show cause order. The appellant was convicted of rape in the District Court of Wharton County, Texas, on the 16th day of March 1956. His punishment was fixed at death. On appeal to the Court of Criminal Appeals of Texas, the judgment was affirmed.[1] Two motions for rehearing were overruled. The District Court of Wharton County, Texas, then pronounced a death sentence upon appellant and directed that it be executed at the State Penitentiary at Huntsville, Texas, on April 24, 1957.

On March 26, 1957, without any request from appellant, the Honorable Price Daniel, Governor of Texas, granted a constitutional reprieve as follows:

"Whereas, Junior Lee Williams, Execution No. 400 was convicted in the District Court of Wharton County, Texas and on March 22, 1957 he was sentenced to Death for the crime of Rape, and the Court set the date of execution for April 24, 1957.

"And, Whereas, Section 11 of Article IV of the Constitution of Texas provides that: 'The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty days,'

"Now, Therefore, I, Price Daniel, Governor of the State of Texas, by virtue of authority vested in me under the Constitution and laws of this State, do hereby grant unto the said Junior Lee Williams, the Constitutional Reprieve of Thirty Days, and order that the Execution be Stayed for Thirty Days from April 24, 1957 to May 24, 1957."

Upon application of appellant's counsel, the Honorable Hugo L. Black, Associate Justice of the Supreme Court of the United States, entered an order on April 22, 1957, staying the execution to and including May 7, 1957. On May 21, 1957, Justice Black entered an order further staying the execution pending the Supreme Court's disposition of a petition for writ of certiorari. On October 14, 1957, the Supreme Court denied certiorari.[2]

The stays of execution having expired, the District Court of Wharton County, Texas, by order entered on November 22, 1957, set December 24, 1957, as the date for the execution of appellant's sentence. On December 16, a petition for habeas corpus was filed in the District Court of Wharton County, Texas, and a hearing was set for December 23, 1957. That Court, however, reconsidered and denied the application for habeas corpus without hearing on December 17. On December 19, the Presiding Judge of the Court of Criminal Appeals of Texas, after consulting his brethren, refused to permit appellant to file a petition for habeas corpus in that Court. On December 20, a petition for habeas corpus was filed in the United States District Court for the Southern District of Texas. That Court thereupon stayed the execution of appellant's sentence pending final disposition of the habeas corpus proceeding and directed the respondent to answer and petitioner to reply so that a record might be developed upon which petitioner's rights might be intelligently and certainly determined and reviewed, citing Baker v. Ellis, 5 Cir., 1952, 194 F.2d 865. By memorandum[3] and order dated February 21, 1958, the United

1. Williams v. State, 1956, 298 S.W.2d 590.

2. Williams v. Texas, 1957, 355 U.S. 850, 78 S.Ct. 65, 2 L.Ed.2d 52.

3. "One of the matters claimed by Petitioner is 'that officially he was electrocuted before sunrise on the 24th of May, 1957, by the Warden of Huntsville Penitentiary.' The claim is a fiction. Petitioner was not in fact electrocuted. Petitioner was then prosecuting his petition to the Supreme Court of the United States for writ of certiorari and on May 21, 1957, the Honorable Hugo L. Black, Associate Justice of the Supreme Court of the United States, ordered that the execution and enforcement of the sentence of death imposed upon the Petitioner by the District Court of Wharton County of the State of Texas be stayed, pending disposition of the petition for writ of certiorari.

States District Court declined to grant the writ or to enter a show cause order. This appeal followed.

Appellant insists upon three "Points of Error":

## "I.

"The Court erred by refusing to grant the Writ of Habeas Corpus because, where the various stays of execution, the first of which was not at the instance of Petitioner, have expired, and there is no Texas Statute authorizing any Court to resentence Petitioner to be electrocuted, a resentence by the District Court of Wharton County, Texas, is arbitrary, and denies to Petitioner that due process of law and that equal protection of the laws as is guaranteed to Petitioner by the XIV Amendment to the Constitution of the United States.

## "II.

"The Court erred by refusing to grant the Writ of Habeas Corpus because, at the time of the arrest of petitioner none of the exceptions existed authorizing an arrest without a warrant, and the admission of evidence thus obtained deprives the accused of equal protection of the laws and due process of law as is guaranteed to petitioner by the IV, V and XIV Amendments to the United States Constitution.

## "III.

"The Court erred by refusing to issue or grant the Writ of Habeas Corpus, because the purported confession was extorted, and no evidence obtained by an officer, or other person, in violation of any provision of the Constitution or Laws of the United States, or of this State shall be admitted in evidence against the accused on the trial of any criminal case."

"After fully considering the matter, I believe such petition to be without merit, and decline either to grant the Writ of

I. Appellant's first and main proposition is elaborated in brief as follows:

"In Craemer v. Washington, 168 U.S. 124, 18 S.Ct. 1, 42 L.Ed. 407, the question as to the authority of a Court to resentence one to death after the expiration of the original date was raised and the Supreme Court of the U. S. said, 'The appointment of another day for the execution of the death penalty, in accordance with a Statute, when the day first appointed has passed during the pending of an appeal, is not in denial of due process of law or in violation of the Federal Constitution.'

"We contend that the converse of the above rule needs must be true.

"There is no Statute in Texas authorizing any Court to resentence petitioner to be electrocuted after the various stays, the first of which was not at the request of petitioner have expired and a resentence by the trial Court is arbitrary, and denied to petitioner the equal protection of the laws and due process of law, as is guaranteed to petitioner by the XIV Amendment to the Constitution of the United States.

"Art. 805 of the Code of Criminal Procedure of Texas [Vernon's Ann.], provides, 'if the condemned escapes after sentence and before his delivery to the Warden, and be not arrested until after the time fixed for execution, any person may arrest and commit him to the jail of the County in which he was sentenced; and thereupon the Court by whom the condemned was sentenced, shall again appoint a time for the execution'.

"But petitioner never escaped after sentence and before being delivered to the Warden.

Habeas Corpus or enter an Order to Show Cause."

"Art. 806 C.C.P. of Texas provides that if the condemned person escapes after his delivery to the Warden, and be not retaken before the time appointed for his execution, any person may arrest and commit him to the State Penitentiary, the Warden shall certify the fact of his escape and recapture to the Court in which sentence was passed, and the Court shall again appoint a time for the execution.

"Petitioner has been constantly in custody. It is not the petitioner's fault that the Legislature failed to pass a law to meet the situation here raised.

"That the Statutes mentioned in the two preceding paragraphs do not meet the situation here raised is so manifest that argument or further statement is needless.

"In Ratcliff v. State, 106 Tex.Cr. R. 37, 289 S.W. 1072, the Court of Criminal Appeals of Texas, says, 'It is a familiar and well settled rule that penal Statutes are to be construed strictly and not extended by implications, intendments, analogies, or equitable considerations. It is not enough that the case may be within the apparent reason and policy of the legislation upon the subject, if the Legislature has omitted to include it within the terms of its enactments. What the Legislature has, from inadvertence or otherwise omitted to include within the express provisions of a penal law, reasonably construed the Courts cannot supply.'

"It is admitted by Counsel for respondent that the District Court of Wharton County, Texas, followed the procedure set forth in Articles 805 and 806 of the Code of Criminal Procedure of Texas; but criminal statutes cannot be extended by implications, intendments, analogies, or equitable considerations."

We do not agree. The judgment of the District Court of Wharton County, Texas, in appellant's case and the sentence pronounced by that Court remain in effect and unsatisfied. That Court, in substance, held that it was clothed with inherent power and authority to assign a new date for the execution of appellant's sentence.[4]

It is conceded that the Texas statutes do not specifically provide for the setting of a new date for the execution of the death sentence pronounced against the appellant. As has been stated, the Court of Criminal Appeals of Texas declined to review by habeas corpus the decision of the State District Court that it had implied and inherent authority to provide for the execution of its judgment. That holding does not contravene the Constitution of the United States. As well stated in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188; "And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."

▮▮▮ II and III. Appellant's second and third points of error do not present serious questions. The State Court of Criminal Appeals gave full consideration to the contentions that evidence obtained by an arrest without a warrant was inadmissible, and that appellant's

---

4. See, In re Cross, 1892, 146 U.S. 271, 13 S.Ct. 109, 36 L.Ed. 969; Nicholas v. Commonwealth, 1895, 91 Va. 813, 22 S.E. 507; State v. Levelle, 1892, 38 S.Car. 216, 16 S.E. 717, 17 S.E. 30; State v. Armstrong, 1904, 45 Or. 25, 74 P. 1025; 24 C.J.S. Criminal Law § 1614, p. 166; 15 Am.Jur., Criminal Law, § 513.

The general law has long been settled that, "The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied." Wayman v. Southard, 1825, 10 Wheat. 1, 22, 6 L.Ed. 253.

confession was involuntary, and the Court held those contentions without merit.[5]

Even if it were conceded, and it is not, that evidence obtained by an illegal arrest or search was admitted by the State court, that would not violate the Federal Constitution.[6]

The evidence in this case [7] does not require that we set aside the finding of the two State courts and a jury and adjudge the admission of the confession so fundamentally unfair as to constitute a denial of due process of law.[8]

Finding no error in the record, the judgment is

Affirmed.

5. Williams v. State, 1957, 298 S.W.2d 590.

6. Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

7. Summarized in the opinion of the Court of Criminal Appeals of Texas as follows:

"The appellant testified and described three incidents which caused him to confess. It is impossible to tell from his testimony the sequence of these events. He states that he was carried out in the country about six miles, that during the trip the handcuffs were tightened around his wrists, that he was required to stand in front of an automobile's lights while his picture was taken, and that he was then returned to jail where his wrists were bathed in cold water until the swelling was reduced. He states that while at the jail one of the officers hit him twice with his fists and cursed him. He states that a crowd had gathered around the jail, that some man came in the jail armed with a shotgun and the officers told the man that the appellant was not there and instructed him to leave, and that at one stage of the questioning the sheriff had told him that he would 'let the people get me' and at another time someone told him that they were going to put him out on the courthouse lawn. He stated finally, ' * * * I figured out and thought up a funny statement, I said, "Maybe if I think of it and give it to them, maybe they won't bother me", and I said, "Go ahead and get your typewriter, I will tell you all about it." '

"Appellant testified that he did not know how the blood had gotten on his shorts and clothes.

"Several witnesses for the appellant testified that he had left a place where they had been gambling at one o'clock A.M. on his way home.

"Each of the persons present on the night in question denied the trip to the country, denied that anyone hit the appellant, and denied the presence of or any reference to a mob or that any man had entered the jail with a shotgun looking for the appellant or that anyone had threatened to turn the appellant over to anyone else. The nearest the appellant came to supporting his testimony about a crowd of people around the jail was an admission by one witness that 'there were a few men out in the street later on that night.'

"If a crowd of people had assembled at the jail prior to the time he confessed, it would appear that proof of such fact would have been readily available to the appellant.

"Since the issue as to the crowd, as well as the other issues, was fully controverted, there remained no undisputed evidence which renders the confession inadmissible." Williams v. State, 1957, 298 S.W.2d 590, 593.

8. Lisenba v. California, 1941, 314 U.S. 219, 238, 62 S.Ct. 280, 86 L.Ed. 166; Ward v. Texas, 1942, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663; Fikes v. Alabama, 1957, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; Payne v. Arkansas, 1958, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975.