Allen FISHER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 36891.

Court of Criminal Appeals of Texas.

May 13, 1964.

Rehearing Denied June 17, 1964.

Donald Lasof, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and James I. Smith, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is felony theft with two prior felonies less than capital used for enhancement purposes; the punishment, life in the state penitentiary.

The facts, briefly stated due to our disposition of this cause, are as follows. Appellant was an employee of the Jackson Texaco Service Station at 7918 Eastex Freeway, Houston, Texas, operated by Aaron Jackson and his brother, Charles Jackson. Five automobile tires were found to be missing on November 30, 1962. Appellant first denied any knowledge of what happened to the tires.

Charles Jackson, co-owner of the station, in an attempt to discover who took the tires and find their location made the following statements to appellant, i. e., that he (Charles Jackson) would help pay for the tires if they had been sold, would not press charges against appellant, would not call the police and that appellant would not be fired.

The only serious complaint made by appellant is in the action of the court in refusing to submit appellant's requested charge as to the voluntary nature of the confession made to Charles Jackson. The charge requested is as follows: "You are further instructed that if you believe from the evidence, or have a reasonable doubt thereof, that prior to the making of the alleged confession Charles Jackson told the defendant or promised him, the said defendant, that he the said Charles Jackson would not press charges against the defendant, and such promise or statement was operating on the mind of the defendant at the time said confession was made, and the defendant was induced thereby to make the

confession, then the same should be entirely disregarded by the jury and not be considered against the defendant."

We conclude the trial judge was in error in his failure to so charge the jury.

It is a well established general rule affirmed by statute in this state, that a confession of guilt by an accused is admissible against him when, and only when, it was freely and voluntarily made without having been induced by the expectation of any promised benefit, or by the fear of any threatened injury or by the exertion of any improper influence. Art. 726 Vernon's Tex. C.C.P.

The early case of Searcy v. State, 28 Tex. App. 513, 13 S.W. 782, was reversed upon similar grounds. That case held that a confession was inadmissible where defendant was induced to make the confession by the Sheriff, who after warning him, told him if he would tell all about it, he would do all he could for him in the case, the confession was not voluntary, being induced by promise, persuasive and positive, by one in authority.

■ We also recognize the rule as stated in the state's brief that, "To render a confession inadmissible upon the ground that it was induced by the promise of some benefit to defendant, such promise must be positive, and must be made or sanctioned by a person in authority and it must also be of such character as would be likely to influence the defendant to speak untruthfully." 1 Branch 2d Sec. 88.1 page 95.

■■ It seems to us that a fair criterion to follow in determining the admissibility or inadmissibility of a confession where the contention is made that the confession was secured by influence or promise is to test the degree of influence exerted. That is, if the influence applied was such as to make the defendant believe his condition would be bettered by making a confession, true or false, then the confession should be excluded. On the other hand, if this is not true then the confession is admissible.

We adhere to and follow the rule announced by Judge Krueger in Ethridge v. State, 133 Tex.Cr.R. 287, 110 S.W.2d 576, wherein he quoted from Wharton on Criminal Evidence, Sec. 650–a, in discussing the meaning of the "person in authority," which says:

"The actual relation between the parties, and perhaps the relation as it actually appeared to the accused, is the controlling factor."

The same author further says:

" 'The test is whether the accused was likely to view the promise as authoritative, and this test is to be determined by the standard of the person confessing.' The injured party, the employer of the accused, and officers, have been held to be within the meaning of 'persons within authority.' "

■ This, we think, sustains our view that the statement was made to a person in authority. Hanus v. State, 104 Tex.Cr.R. 543, 286 S.W. 218, opinion upon rehearing, is similar to the case at bar in that a priest was the injured party, and he largely induced the confession. This case was reversed because of the refusal of the Court to give the jury appropriate instructions to disregard the confession if not voluntary. The identical question that we have before us was determined in that case. The opinion by Judge Morrow also clearly sets out the rule as to inducements relied upon by a defendant when made by the injured party. See also Vol. 7 A.L.R. p. 434 where the rule is stated, "where a servant is charged with an offense against the property of his employer, the employer is 'a person in authority,' within the rule that a confession induced by a promise of immunity from such a person is inadmissible." In concluding that the statements or promises made by Charles Jackson were likely to cause appellant to speak untruthfully, we point out that appellant had at least two prior convictions on his record and would, it seems, be inclined to admit a crime he had not committed which would not be prosecuted, rather

than risk the loss of his freedom for life if he were prosecuted. Also, in this regard, appellant's job was also in jeopardy had he not admitted the theft, whereas he had reason to believe there was no danger in admitting it. It should also be pointed out that besides being appellant's employer, the record reflects that Charles Jackson was also a minister which would further lead appellant to rely on the promises made.

■ It appears that the confession may not have been admissible as a matter of law as it is undisputed that the promises were made. See McHenry v. State, 163 Tex.Cr. R. 436, 293 S.W.2d 773, and Williams v. State, 164 Tex.Cr.R. 347, 298 S.W.2d 590, 355 U.S. 850, 78 S.Ct. 65, 2 L.Ed.2d 52. However, we are not called upon to pass on that question as no objection was made when the confession was received into evidence. We do conclude though that the jury should have had an opportuntiy to pass on the question. Jordan v. State, 163 Tex. Cr.R. 287, 290 S.W.2d 666. Roseburough v. State, 158 Tex.Cr.R. 593, 258 S.W.2d 332.

The judgment is reversed and the cause remanded.

### ON STATE'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

The state contends that the court did not err in refusing the requested charge because the evidence did not raise the issue, there being no testimony in the record to the effect that the promise made by Charles Jackson "was operating on the mind of the defendant at the time the confession was made and the defendant was induced thereby to make the confession."

We quote from the testimony of the witness Charles Louis Jackson:

"Q. Well, when you searched around the building in the vacant lot, did you find the tires? A. No, I didn't.

"Q. Did you then come back to this Defendant Allen Fisher, Jr. and ask him about the tires? A. Yes, sir, I did.

"Q. And what was his reply to you at that time?

"A. He told me that he didn't take the tires.

"Q. What did you then do?

"A. Well, I told him that I was going to call the police and have them pick him up.

"I told him that if he had the tires I would wish that he would give them to me, or tell me where they were.

"I told him that I would even pay half of the tires and he would pay half, if he would just tell me that he got the tires.

"Q. Did he still deny taking them?

"A. He denied that he had the tires.

"Q. Did you then call the police?

"A. Yes, I called the police.

"Q. Subsequent to your calling the police, did you go back and talk to this Defendant again?

"A. Yes, I went back and talked to him.

"Q. Did he say anything to you at that time about taking the tires?

"A. Well, after I had questioned him over a period of time, about fifteen or twenty minutes—I wasn't questioning him, I was just telling him some things about how good I had been to him, and that I was trying to help him make it, and I would help him any way that I could, *so he just broke down and told me that he had taken the tires.*"

We remain convinced that the requested charge or one of similar import should have been given and the jury allowed to pass upon the question of whether or not the confession was induced by the promise made by his employer.

The state's motion for rehearing is overruled.