**Opinion filed September 10, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00027-CR

_____

### KEVIN SCOTT KELLERBY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 18509B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Kevin Scott Kellerby of continuous sexual abuse of a child and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifty-five years and a fine of $10,000. *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014). The trial court sentenced Appellant accordingly. We affirm.

Appellant's conviction for continuous sexual abuse was based on allegations by Appellant's daughter, S.E.K., that Appellant penetrated her sexual organ with his

sexual organ on multiple occasions. On appeal, Appellant asserts that the trial court erred when it denied his motion to suppress. Appellant also argues that the trial court erred when it allowed the State to make improper jury arguments regarding Appellant's right to a jury trial, right to due process, and right to confront and cross-examine the witnesses brought against him.

In his first issue, Appellant asserts that the trial court committed reversible error when it denied his motion to suppress "for violations of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Articles 38.22 and 38.23 of the Texas Code of Criminal Procedure."[1] In the "Summary of the Argument" section in his brief, Appellant further argues that "[p]olice action in enticing [him] to give an interview for a supposed polygraph, making representations of false material facts and that Appellant's statement would spare the child further harassment, and preventing Appellant from leaving when he attempted to do so rendered his statement involuntary and inadmissible." Appellant did not raise any of these specific objections in the trial court, nor does it appear from the evidence that there was ever an issue about a polygraph, about sparing the child victim further harassment, or about an attempt by Appellant to leave the interview. Appellant alleges in the argument section of his brief that the detective that interrogated him made an impermissible promise that "was of such a character as would likely cause a person to speak untruthfully and ultimately even make Appellant inclined to admit to a crime he didn't commit." Because Appellant's contention in the body of his brief comports with the arguments that he made in the trial court, we will address that specific argument in our review of Appellant's first issue.

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014), art. 38.23 (West 2005).

In his motion to suppress, Appellant argued that his statement to law enforcement was involuntary and was in violation of the Due Process Clause and of Article 38.21 of the Texas Code of Criminal Procedure.[2] Specifically, he alleged that the detective rendered his statement involuntary when the detective undermined his right and desire to remain silent, when he purported to provide a legal analysis of the case to Appellant, and when he made an impermissible promise.

The trial court held a pretrial hearing on the motion to suppress. Detective Eric Vickers of the Abilene Police Department testified that he interviewed Appellant as part of an investigation regarding allegations made by Appellant's daughter. Appellant rode with Detective Vickers from Appellant's home to the Law Enforcement Center where the interview was conducted; Appellant's mother followed behind them in her own vehicle. Detective Vickers testified that Appellant was not under arrest at the time that Appellant entered the interview room and that he advised Appellant that Appellant was not under arrest and was free to leave at any time. Detective Vickers also read Appellant the *Miranda*[3] warnings.

The interview was recorded, and during the hearing, the State played the recording for the trial court. Detective Vickers emphasized throughout the interview that it was important for him to hear Appellant's side of the story. Detective Vickers explained, "Your story, what we talk about in here, defines whether you are a monster or whether you are a human being who made a mistake once." After over an hour had passed, the following exchange occurred between Appellant and Detective Vickers:

> APPELLANT: Let's say that it occurred one time . . . if it occurred one time . . . and I'm not saying it did.

---

[2]*See* U.S. CONST. amend. XIV; CRIM. PROC. art. 38.21.

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

DETECTIVE VICKERS: Right, we're speaking hypothetically.

APPELLANT: I'm not saying I did, but what would that mean to me from your point of view, legally?

DETECTIVE VICKERS: Well, the first thing that it would mean to me, legally, is that I'm not going to file the higher charge on you. Okay. The second thing that it would mean to me is that you're a real person.

A few minutes later, Detective Vickers told Appellant:

Legally speaking, whether it's one time or twenty, makes a difference. But what makes the most difference is neither one of those will make a difference if you give me a b.s. story that's not believable and we go before a jury and your daughter gets up on the stand and testifies and tells them exactly what she told the forensic interviewer in detail, step by step, and how it felt to her. And then they look over at you sitting with next to your attorney. And your attorney, you know, stands quiet and gets up there and tells them, you know, that, you know, you were looking at her medically and that you did give her a bath once.

. . . .

They are going to look and listen to that defense attorney and they're going to say he is full of s--t. And they're going to look at that eleven-year-old little girl sitting on the stand, and then they're going to look at you and they're going to call you a monster.

Approximately twenty minutes later, Appellant admitted that it happened once. Detective Vickers submitted the case to the district attorney's office as an aggravated sexual assault case; however, Appellant was charged and convicted with continuous sexual abuse.

During the suppression hearing, Appellant testified that he felt that there were only two options: that he was guilty of one act or more than one act; "[t]here was no innocence presumed." When asked whether he made the admission voluntarily, Appellant responded that he believed that he only had the choice between whether he committed the act once or more than once. He said that he probably would not

4

have admitted to the one time if he had been given the choice to say that he was innocent.

The State argued that the question asked by Appellant related to what it would mean if it *occurred* one time, not what it would mean if Appellant *confessed* to only one time. The State, however, conceded that it would have been an impermissible promise if Detective Vickers had told Appellant that he would file only the lesser charge if Appellant confessed to committing the act only one time. Defense counsel responded that the State's argument was too pedantic: "[W]e all understand that when [Appellant] asked the detective that, what he is asking is amounting to, [i]f I tell you it happened one time, then what effect does that have legally?"

The trial court found that Appellant made the statement voluntarily, and it denied Appellant's motion to suppress. The trial court entered the following pertinent findings of fact and conclusions of law: (1) Appellant voluntarily agreed to go to the LEC for questioning; (2) Appellant was not in custody and was not under arrest at the beginning of the interview; (3) Detective Vickers gave Appellant his *Miranda* warnings and also advised Appellant that he was not under arrest and free to leave at any time; (4) Detective Vickers admitted to defense counsel that his interview strategy was to give Appellant two choices, which were that Appellant sexually abused his daughter one time or that Appellant sexually abused his daughter several times; (5) Appellant asked Detective Vickers, "[I]f I tell you it happened one time, then what effect does that have legally?"; (6) in response to Appellant's question, Detective Vickers said, "[I]t means I'm not going to file the higher charge"; (7) despite that exchange, Appellant understood that he had the right and the option to tell the absolute truth and that he had the right to say that he did not sexually abuse his daughter at all; (8) the detectives never coerced or threatened Appellant in any way; (9) the detectives never offered Appellant any money; (10) the detective never

promised Appellant anything; (11) the detective did not give Appellant legal advice; and (12) Appellant's statements to Detective Vickers were voluntarily given.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

A defendant's statement may be used in evidence against him if he made it freely and voluntarily and without compulsion or persuasion. CRIM. PROC. art. 38.21. A statement is inadmissible if it was induced by a promise of some benefit to the defendant and the promise was positive, was made or sanctioned by someone in authority, and was of such an influential nature that it would cause a defendant to speak untruthfully. *Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964); *see also Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) (listing the requirements); *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997) (listing same); *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (listing same); *Jacobs v. State*, 787 S.W.2d 397, 399 (Tex. Crim. App. 1990) (listing same); *Washington v. State*, 582 S.W.2d 122, 124 (Tex. Crim. App. [Panel Op.] 1979) (listing and explaining same). Whether the confession was true or false is not relevant to the determination of whether the confession was voluntary. *Martinez*, 127 S.W.3d at 794–95. "[I]f the influence applied was such as to make the defendant

6

believe his condition would be bettered by making a confession, true or false, then the confession should be excluded." *Fisher*, 379 S.W.2d at 902.

On appeal, the State contends that Detective Vickers did not make a positive and unequivocal promise to Appellant. Instead, Appellant asked a hypothetical question, and Detective Vickers responded with a hypothetical answer. We agree that Detective Vickers did not make a positive promise to Appellant. To be a "positive" promise, the promise "must carry the suggestion of a *quid pro quo*." *Hill v. State*, 902 S.W.2d 57, 59 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (citing *Smith v. State*, 779 S.W.2d 417, 428 n.6 (Tex. Crim. App. 1989)). The trial court found that "Appellant asked Detective Vickers, '[I]f I *tell you* it happened one time, then what effect does that have legally?'" However, the record shows that Appellant actually asked Detective Vickers, "[I]f *it occurred* one time . . . what would that mean to me from your point of view, legally?" (emphasis added). Thus, Detective Vickers did not tell Appellant that, if Appellant confessed to committing the act only one time, he would file only the lesser charge. Rather, Detective Vickers told Appellant that, if the act had only occurred one time, he would file only the lesser charge. The record does not indicate that there was ever a conversation in which Detective Vickers promised Appellant something in return for his confession. Furthermore, Appellant did not testify that he confessed because Detective Vickers promised him a lesser charge but, instead, testified that he probably would not have confessed to the one time if he had been given the choice that he was innocent. Appellant, however, was given the choice to remain silent. He was given his *Miranda* warnings and was also told that he was free to leave several times during the interview. He never invoked his right to remain silent, nor did he request to leave. He agreed to stay in the interview room and talk to Detective Vickers. Therefore, we hold that the trial court did not abuse its discretion when it found that

Appellant voluntarily gave his statement to police and when it denied Appellant's motion to suppress. We overrule Appellant's first issue.

In his second issue, Appellant argues that the trial court erred when it allowed the State to make improper references during closing arguments to Appellant's right to a jury trial, right to due process, and right to confront witnesses. Appellant did not object to the State's closing argument at trial. A defendant's failure to object to jury argument waives the issue on appeal, even if the issue is constitutional in nature. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Chapman v. State*, 349 S.W.3d 241, 247 (Tex. App.—Eastland 2011, pet. ref'd); *see also* TEX. R. APP. P. 33.1. Therefore, Appellant has waived his right to raise this issue on appeal. Appellant's second issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


September 10, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

8