ACCEPTED
06-14-00157-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/11/2015 2:01:46 PM
DEBBIE AUTREY
CLERK

## NO. 06 – 14 – 00157 – CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/11/2015 2:01:46 PM
DEBBIE AUTREY
Clerk

### IN THE SIXTH DISTRICT COURT OF APPEALS
### TEXARKANA, TEXAS

### CINQUE ROSS
### Appellant,

### V.

### THE STATE OF TEXAS
### Appellee

On appeal from the 188TH District Court, Gregg County, Texas
Trial Court Case No. 43,104-A

## BRIEF OF THE STATE OF TEXAS

**– ORAL ARGUMENT REQUESTED ONLY IF GRANTED TO APPELLANT –**

**GREGG COUNTY CRIMINAL
DISTRICT ATTORNEY'S OFFICE**

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701
Email: zan.brown@co.gregg.tx.us

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................1

STATEMENT OF FACTS..............................................................................4

SUMMARY OF THE ARGUMENT ...............................................................6

ARGUMENT...................................................................................................7

I. (Issue One) The trial court properly prohibited Cinque Ross from withdrawing his jury waiver as he failed to meet his burden of proving no adverse consequences..........................................................7

    *Standard of Review* ..............................................................................7

II. (Issue Two) The custodial interrogation was not illegally induced, and was not involuntary.............................................................13

    *Standard of Review* ............................................................................*13*

III. (Issue Three) Error has not been preserved. Even if preserved, the search warrant was valid, and the judge properly allowed its admission, along with the evidence taken during the search..........................................................................................18

IV. (Issue Four) Penal Code section 46.04 (a) (1) is constitutional. ...................23

CONCLUSION..............................................................................................27

PRAYER .......................................................................................................28

CERTIFICATE OF SERVICE .....................................................................28

CERTIFICATE OF COMPLIANCE ............................................................29

# INDEX OF AUTHORITIES

## **Federal Cases**

396 U.S. 968, 24 L. Ed. 2d 434, 90 S. Ct. 450 (1969)............................................23

*D.C. v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)..............25

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d

  894 (2010) ..............................................................................................................25

*United States v. Anderson*, 559 F.3d 348 (5th Cir. 2009)........................................25

*United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003)....................................25

*United States v. Powell*, 574 Fed. Appx. 390 (5th Cir. 2014) .................................25

## **State Cases**

*Bonds v. State*, 403 S.W.3d 867 (Tex. Crim. App. 2013)........................................20

*Boyd v. State*, 899 S.W.2d 371 (Tex. App.—Houston [14th Dist.] 1995, no pet.) .24

*Burton v. State*, 505 S.W.2d 811 (Tex. Crim. App. 1974) .......................................13

*Espinosa v. State*, 899 S.W.2d 359 899 S.W.2d 359, 363 (Tex. App.—Houston

  [14th Dist.] 1995, pet. ref'd) ..................................................................................13

*Fisher v. State,* 379 S.W.2d 900 (Tex. Crim. App. 1964) ........................................14

*Lincoln v. State*, 508 S.W.2d 635 (Tex. Crim. App. 1974) ........................................8

*Long v. State*, 823 S.W.2d 259 (Tex. Crim. App. 1991) ..........................................13

*Lucas v. State,* 791 S.W.2d 35 (Tex. Crim. App. 1989) .................................. 23, 24

*Marquez v. State*, 921 S.W.2d 217 (Tex. Crim. App. 1996) ..................................7, 8

*McGuire v. State*, 537 S.W.2d 26 (Tex. Crim. App. 1976) ......................................23

*Montgomery v. State*, 810 S.W.2d 372(Tex. Crim. App. 1990), .............................7

*Short v. State*, 511 S.W.2d 288 (Tex. Crim. App. 1974)...........................................8

*Smith v. State*, 779 S.W.2d 417 (Tex. Crim. App. 1989) .......................................14

*Sterling v. State*, 800 S.W.2d 513 (Tex. Crim. App. 1990)....................................13

*Taylor v. State*, 255 S.W.3d 399 (Tex. App.—Texarkana 2008, pet. ref'd) .............7

*Washington v. State*, 582 S.W.2d 122 (Tex. Crim. App. 1979) .............................14

*Webb v. State*, 439 S.W.2d 342 (Tex. Crim. App. 1969) .......................................23

*Wilson v. State*, 44 S.W.3d 602 (Tex. App.—Fort Worth 2001, pet. ref'd)……24

### State Statutes

Tex. Const. Art. I ....................................................................................................24

Tex. Crim. Proc. Code Ann. art. 38.22 (Vernon) ...................................................13

# STATEMENT OF FACTS

Cinque Ross was indicted for being a felon in possession of a weapon. CR 4. He had been previously convicted of assault on a public servant in cause number 33,698-A. SX 1; 5 RR 13, 39-40. (He also had a number of other convictions, which were not introduced until punishment. SX 34-43, 5 RR 69). Detective Joe Chitwood, working with information from a confidential informant, obtained a search warrant for Ross' house at 405 Harris, Kilgore, Texas. SX 2; 5 RR 21. A SWAT team entered and secured the house, locating Cinque Ross in a blue bedroom. 5 RR 24. Detective Chitwood entered, and as he expected, he found four guns in the closet of that bedroom, and located mail addressed to Cinque Ross at that address and a prescription bottle with Ross' name and that address on it. SX 20-24; 5 RR 26, 29-30. The guns he found in the closet were introduced as State's Exhibits 25-28, and the ammo as State's exhibits 29-31. 5 RR 30-36. Detective Chitwood interviewed Ross after Mirandizing him. SX 32. The purpose of that interview was to talk, at Ross' request, about his working as an informant to get help with his cases. SX 33. In the interview, however, he admitted having the guns and the other drugs. SX 33.

Ross waived a jury on February 14, 2014 and his attorney told the Court that Ross understood the ramifications of waiving a jury trial. 2 RR 10-11, CR 21. On March 7, 2014, he attempted to retract the jury waiver, saying he had not understood, and that he had been under "emotional distress." 4 RR 5, 8. The judge then ruled that the jury waiver would stand. 4 RR 9. Ross pleaded "not guilty" to the Court and the bench trial began on

4

July 9, 2014. The judge found him guilty and sentenced him to eight years in the Texas Department of Criminal Justice—Institutional Division. See Judgment, CR 6. He filed a motion for new trial, which was denied after a hearing on October 8, 2014. Supp. CR 2. This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court did not abuse discretion by refusing to allow Cinque Ross withdraw his jury waiver, because Ross failed to meet his burden of proving "no adverse consequences."

The trial court did not abuse discretion by declining to suppress the video of the voluntary custodial interrogation or the evidence that interrogation produced.

The alleged error regarding problems with the search warrant has not been preserved. Even if it had been preserved, the trial court committed no error in finding the search warrant valid and admitting evidence taken during the search.

The second amendment right to bear arms does not prevent a State from legislating that a felon convicted of a violent crime cannot possess a firearm for five years after he is released from parole.

# ARGUMENT

## I. (Issue One) The trial court properly prohibited Cinque Ross from withdrawing his jury waiver as he failed to meet his burden of proving no adverse consequences.

Appellant's issue is whether the trial court abused its discretion in denying the withdrawal of a jury waiver which was executed after proper admonishments.

**Standard of Review**

A trial court's overruling of a motion to withdraw a jury trial waiver is reviewed for an abuse of discretion. *Marquez v. State*, 921 S.W.2d 217, 219 (Tex. Crim. App. 1996). A trial court abuses its discretion when it acts without reference to guiding rules and principles, or in other words, when it acts arbitrarily or capriciously. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990), on reh'g (June 19, 1991), on reh'g (June 19, 1991). "A defendant may withdraw his waiver of jury trial if he produces evidence the motion to withdraw is made sufficiently in advance of trial that the granting of the motion will not produce adverse consequences." *Taylor v. State*, 255 S.W.3d 399, 401 (Tex. App.—Texarkana 2008, pet. ref'd). However, if the State, the record itself, or the trial court rebuts the defendant's claim of no adverse consequences, the trial court does not abuse its discretion in denying the motion to withdraw the waiver of jury trial. (citing *Marquez v. State*, at 223).

7

Once a jury waiver is executed and approved, the defendant must get the court and the prosecutor to agree to a withdrawal of a waiver. Tex. Code Crim. Proc., Art. 1.13(a) (Vernon, 2013). The Court of Criminal Appeals considered a constitutional challenge to the statutory procedure for waiving trial by jury in 1974 and upheld its constitutionality. *Short v. State*, 511 S.W.2d 288 (Tex. Crim. App. 1974). The defendant has no right to unilaterally withdraw his waiver. *Lincoln v. State*, 508 S.W.2d 635, 638 (Tex. Crim. App. 1974). However, even after all parties agree to waiver, the Court of Criminal Appeals has approved a trend to permit waiver withdrawal—even after all parties agree--if it causes no adverse consequences and if it is made in good faith. *Marquez*, 921 S.W.2d at 221.

**a. Defendant has the burden to raise the issue and the ultimate burden of persuasion.**

The defendant has the burden to show that a waiver withdrawal "will not (1) interfere with the orderly administration of the business of the court; (2) result in unnecessary delay or inconvenience to witnesses; or (3) prejudice the state." *Marquez v. State,* 217 at 221. If he shows that, the State must produce evidence of "no adverse consequences," and then the defendant has the burden of persuasion.

**b. Appellant was properly admonished before he waived a jury, and when he wanted to withdraw it, he put on no evidence of "no consequences" of his waiver withdrawal.**

On February 14, 2014, a plea agreement was available to resolve several cases against Ross including this one for unlawful possession of a firearm by a

8

felon. 2 RR 4-5. At first he rejected it, but after a conference with his attorney, he returned and waived a jury in this case and in a case for possession of controlled substance. 2 RR 10.

> THE COURT: Okay. . . . Now, in both of your cases, in the indicted case the unlawful possession of a firearm by a felon and your drug case, you have the absolute right to have a jury trial in each of those cases; do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: All right. Do you wish to have a jury trial in either of those two cases?
> THE DEFENDANT: No, sir, I don't. 2 RR 10.
>
> THE COURT: So as I understand it, today you want to give up your right to a jury trial, you've waived indictment, you want to now give up your right to a jury trial in the possession of a controlled substance case; is that correct?
> THE DEFENDANT: Yes, sir, Your Honor. 2 RR 11.

The plea agreement actually called for the State to dismiss or file a plea in bar on the firearm-possession-by-felon indictment (this case) and refuse to prosecute an unindicted state jail possession charge, and a failure to ID misdemeanor, in return for a guilty plea and six-year sentence in an unindicted possession-of-controlled-substance case (alleging over 1 gram but less than 4). 2 RR 11-12.

> The Court then admonished the defendant regarding his jury waiver:
>
> THE COURT: Do you understand if I approve the jury waiver today in both of these cases you can never come back and ask for a jury trial; do you understand that?
> THE DEFENDANT: Yes, sir, Your Honor.

9

THE COURT: If you change your mind about the plea agreement, if you change your mind about pleading guilty, change your mind about anything these two cases will then be tried to the Court or we'll have open pleas or some non-jury disposition; do you understand?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Mr. Hagan, do you feel like Mr. Ross fully understands the implications of the jury waivers today?

MR. HAGAN: Yes, Your Honor, I do.

THE COURT: Have you had adequate time to go over that with him?

MR. HAGAN: Yes, Your Honor.

THE COURT: And the State joins in the waivers of jury trial in each case?

MS. REED: Yes, Your Honor. 2 RR 11-12.

Then the court set the matter for February 20 and recessed the proceedings. 2 RR 13. When the court reconvened Mr. Hagan announced that Mr. Ross and his family wanted to hire a lawyer and proceed to trial. 3 RR 4. The case was reset. When the court reconvened on March 7, Hagan had not been replaced, but the lab report had come in, stating that the amount of the controlled substance was less than one gram, and the amount listed in the information was more than a gram, less than four grams. 4 RR 4. Since the previous agreement had been six years for the possession when everybody thought the amount was more than a gram, Ross rejected the offer. On March 7, the State made a new offer of 5 years for the firearm charge (this case). 4 RR 5. Ross also rejected that offer. 4 RR 5. Then the following discussion occurred.

10

MR. HAGAN: He also is here to say that he believes he was confused when he waived the jury, that he did not understand what he was doing when he waived the jury.

THE COURT: On the weapons case?

MR. HAGAN: On the weapons case. And the record I think speaks for itself, and we leave that up to the Court as to exactly what's required of the defendant, Mr. Ross; we leave that up to you. We're either ready to go forward on the weapons case without a plea agreement to the Court or the Court rescinds the jury waiver, then I guess it would be set and we'll be ready for a jury trial. 4 RR 5.

The prosecutor refused to agree to the waiver withdrawal, and argued that since Ross was represented by competent counsel when he waived the jury, a bench trial would be appropriate. 4 RR 5. Then the Court ruled that the jury waiver remained in place on the weapons case only[1], and ordered it set for a bench trial. 4 RR 5-6.

Mr. Ross then spoke up, saying he didn't understand. Hagan reminded him he had waived a jury, to which Ross responded, "I know. I was unaware of that though. . ." 4 RR 8. Then he added, "I didn't know what I was signing. I was in emotional distress at the time. And I was trying to see if you'd be willing to give me a bond reduction on my bond, and at the time I was unaware of what I was signing, sir. . ." 4 RR 8. Finally, he stated or asked, "I was incompetent at the time?"

---

[1] The prosecutor stated she would seek to have the drug possession case indicted as a state jail felony with two counts, understanding that Ross could have a jury trial on that case.

The Court then stated, "No. That you knew what you were doing, that you waived the jury, and the record will speak for itself. And that may be an appellate point down the road, but I'm going to find that the jury waiver stays in place on the weapons case and we'll proceed that way." 4 RR 8-9.

Applying the law to the facts, one can see that the defendant proved only that he wanted a "do-over." As one can see from the above discussions, neither Ross nor his counsel said anything about adverse consequences—he claimed only a lack of his own understanding.

The defendant may withdraw a jury waiver if he does so early enough and he proves it doesn't create any adverse consequences. In this case there is nothing in the record to show that the defendant even raised the issues of how a delay would not "[1] interfere with the orderly administration of the business of the court; (2) result in unnecessary delay or inconvenience to witnesses; or (3) prejudice the state."

Having failed to prove that the withdrawal would have no adverse consequences, Appellant's first issue should be decided in favor of the State.

## II. (Issue Two) The custodial interrogation was not illegally induced, and was not involuntary.

Defense Counsel announced at the beginning of the trial that the statement Ross gave was not voluntary, being induced by promises of leniency and that he would not be prosecuted. 5 RR 12.

### Standard of Review

To review a finding on the voluntariness of a confession, the standard is whether the trial court abused its discretion. The trial judge is the sole judge of the credibility of the witnesses in a pretrial hearing and absent a showing of an abuse of discretion the trial court's findings will not be disturbed. *Long v. State*, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991).

Tex. Crim. Proc. Code Ann. art. 38.22 (Vernon)(3) establishes when a defendant's statements may be used: only if it is properly recorded and after a Miranda warning has been given, the accused has voluntarily waived those rights, the defense attorney has been given proper notice and a copy of such recorded statements, and the recording is preserved.Tex. Code Crim. Pro. Ann. art. 38.22.

Some cases suggest that any evidence of an inducement is reversible error, regardless of its impact on the voluntariness of the confession. *Sterling v. State*, 800 S.W.2d 513, 518 (Tex. Crim. App. 1990); *Burton v. State,* 505 S.W.2D 811, 813 (Tex. Crim. App. 1974).  Other opinions say that a promise does not prohibit

13

admission of a defendant's statement. *Espinosa v. State*, 899 S.W.2d 359, 363 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). One can resolve the incompatible lines of cases by adhering to the following cases which require proof that the promise will likely induce an untruthful statement. Pursuant to that tenet, the court must determine the impact of the promise and the likelihood that it had a negative effect on the voluntariness of the statement. To do that, the Court must determining if the promise is (1) of some benefit to the accused; (2) positive; (3) made or sanctioned by a person in authority; and (4) of such a character as would likely influence the accused to speak untruthfully. *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989); *Washington v. State*, 582 S.W.2d 122, 124 (Tex. Crim. App. 1979); *Fisher v. State,* 379 S.W.2d 900, 902 (Tex. Crim. App. 1964).

**Application**

The testimony of Detective Chitwood regarding the interview containing the confession begins on page 37 of Volume 5. He recognized State's exhibit 32, and explained that that was the form, signed by both Chitwood and Ross before taking the statement. 5 RR 37. Mr. Hagan did not object. 5 RR 38. The video of the interview was introduced, and Hagan asked the judge to rule on them after the *Smith*, 779 S.W.2d, 427 On direct examination, Chitwood repeated the various

14

admissions Ross made on the video. 5 RR 41-45. These admissions were as follows:

- He admitted that he had been on parole, but was off at the time of the offense. 5 RR 41.
- He admitted trying to sell firearms. 5 RR 41
- He admitted possessing firearms. 5 RR 41.
- He stated someone else put them in the closet, but he was aware of their presence. 5 RR 41.
- He admitted that his fingerprints would be found on the firearms if the police fingerprinted the guns. 5 RR 41.
- He admitted that the bedroom where the guns were found is his room.5 RR 41.
- He was able to tell Chitwood where the guns had been located.
- He was in the room where the guns were found.
- He admitted taking the guns out of the house at one point, after bagging them up in a plastic bag and putting them in a backpack, and would walk to sell them. 5 RR 42.

On cross examination, Detective Chitwood said the following:

- He and Ross may have talked between the time he was arrested and when he went to jail. He may have spoken with him briefly at the scene and later on at the interview, but he did not transport him to jail, and Ross did not tell Chitwood he wanted to talk at that time. 5 RR 43-44.
- The video was made two days after his arrest, at Ross' request, to talk about his desire to inform on others to help himself out of these charges. 5 RR 44.
- Since the video, he had other conversations with him after learning from his attorney or the DA that Ross wanted to work. 5 RR 45.
- The reason for not "working him" was that Chitwood, his unit, and his supervisor all felt that the people Ross talked about already had informants working them, and "the one person he could do was so small it wasn't going to be worth our time to get his bonds lowered and to help him on his charges." 5 RR 45.
- Eventually, after he got out, "we tried to work him, and that didn't work out either," meaning that when he was told to call the police at a

15

certain time for a certain task, he never called until days later, and this happened repeatedly. 5 RR 45-48.

On redirect the State emphasized that the interview was the idea of the defendant, by eliciting the following testimony:

- The initial interview on the 20th was the result of request from Ross to talk to Chitwood about working for him. 5 RR 48.

The interview contained the following discourse:

Chitwood told Ross that if Ross was not honest with him, Chitwood could not go to the DA's office and persuade the prosecutor to help Ross with the charges. SX 33, at 10:41:20. Chitwood read the Miranda warnings to Ross and both men signed the record of those warnings. 10:41:51. Chitwood reminded Ross that if Ross is **not** honest, Chitwood would **not** talk to the DA and say he's giving us good information and he's willing to work so he won't go to the pen, and maybe he will get his bond reduced.

Ross stated that if he does "sell," the reason he sells is to support his habit. 10:55:55. When they eventually began to talk about the crimes of which he was accused no promises were repeated. 11:55:00. Ross acknowledged to Chitwood that the guns had been in his son's shoes in the closet, and he specified the "blue" room was his. 11:02:55 to 11:03:50. Then he said that someone else[2] had placed

---

[2] The name was unintelligible from both speakers. It could have been "they" or "Ray" or something else.

the firearms in his closet about three days before, but he knew the guns were there and 11:03:50. When told that the police would be "fingerprinting" the guns, Ross readily admitted that his fingerprints would be on them. 11:04:10. He said he had touched the guns to see if they were still there. 11:04:50. Ross admitted he had removed the guns once to take them out to sell them. 11:05:15.

After they had fully discussed his current offenses, Ross redirected the conversation to just how Ross could help himself by working off the charges. Chitwood made it clear that **the DA would make the final decision**, and will decide how many people Ross had to identify or buy drugs from. 11:09:00-11:00:29. Chitwood indicated Ross **may be** able to work off all the cases, where you will get probation. 11:10:15. The first step was to get the bond lowered. 11:20:00.

Applying the law to the facts of this case, the issue is whether the trial judge abused his discretion as he determined whether the admissions in the interview were illegally induced. The questions to consider are these:

*Was the promise of some benefit to the* accused? Yes, tentatively. It could have been if the information had been useful.

*Was the promise positive?* No, it was contingent on the DA's approval and on the quality of the information and on Ross' honesty. He consistently said we

"may be able" to get these worked off, but it all depends on the work you do. 11:10:00.

*Was the promise made or sanctioned by a person in authority?* Not exactly, he still would go through the rest of his unit and the DA. He specified that the DA would make the final decision. SX 33 at 11:00:00 to 11:00:10.

Most obviously, *was the promise of such a character as would likely influence the accused to speak untruthfully?* No, it was specifically contingent on Ross' being honest and the "promise" was discussed only in respect to Ross' intention to "work off" his cases. The "promise" was not made with respect to the discussion of his current offenses. The interview and the "promise" were instigated by the defendant, because he wanted to make a deal to work off his cases by informing on other dealers. His information, however, was not helpful, because other informers were working the very same people Ross named.

Ros' second issue is without support in the record and should be rejected.

**III. (Issue Three) Error has not been preserved. Even if preserved, the search warrant was valid, and the judge properly allowed its admission, along with the evidence taken during the search.**

The appellant's brief alleges that the search warrant is insufficient to support a search warrant because the informant was not reliable.

18

At trial, defense counsel said in his opening statement that the warrant was without probable cause, did not particularly describe the property, and the four corners of the affidavits did not set forth probable cause. 5 RR 13. When the search warrant and affidavit were offered as State's Exhibit 2, Mr. Hagan objected that "It does not particularly describe the property of the person to be searched. It is stale-- it also does not set forth probable cause in the four corners of the document." 5 RR 21.

Mr. Hagan objected to each item of evidence that was recovered with "same objections," reiterating later that he was objecting "to the warrant, the search, and any evidence that was recovered from it." 5 RR 21, 34.

The Court at first received the warrant, subject to ruling on the overall objection, so that he could "review it as the trial goes along." 5 RR 19, 21, 25, 29, 32, 33, and 36. Then, after receiving a number of exhibits subject to the ruling on the warrant, the Court stated he had reviewed the search warrant and overruled Mr. Hagan's objections. 5 RR 35.

At the motion for new trial (before the record had been transcribed), Appellate Counsel had only this to say about the warrant: "[A]s I understand at trial, perhaps even the pretrial hearing, not really sure, but I believe at trial the Defense challenged the warrant as defective. And so whatever those arguments are I'm putting those in my Motion for New Trial, urging that again today.

The appellate attorney has chosen not to raise the issue of staleness of the affidavit, or the faulty description of the property, or "probable cause in the four corners of the document." These issues should be considered abandoned, and the only issue raised on appeal is the reliability of the informant. The reliability of the informant was not raised at trial or at the motion for new trial, and was therefore not preserved.

**Standard of Review**

Should this court consider and rule on this issue, the *Bonds* opinion is instructive as to the standard of review.

> While an appellate court typically reviews a trial judge's motion-to-suppress ruling under a bifurcated standard, a trial court's determination whether probable cause exists to support a search warrant's issuance is constrained solely to the affidavit's four corners. when we review a magistrate's decision to issue a warrant, we apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches.
>
> Provided the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners. Appellate courts should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner. When in doubt, the appellate court should defer to all reasonable inferences that the magistrate could have made.

*Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013) (Tex. Crim. App. 2013) (internal citations omitted).

If informant reliability is considered, the following excerpts from the affidavit are instructive. Appellant alleges that the affidavit states that he has "a reputation for illegal narcotics trafficking." Appellant's Brief, at 25. However, in context, one can read that that information came not from the informant, but from other law enforcement officers, and they were talking about his arrests, not convictions.

Affiant knows or has learned *from other law enforcement officers* that the suspected party in paragraph II has a reputation for illegal narcotics trafficking. Suspected party has *a criminal history record* and upon reviewing same, Affiant has learned of two previous *arrests* wherein suspected party was charged with drug offenses. SX 2 (emphasis added to show that informant was not the source and that the affidavit did not assert he had two convictions).

Appellant further claims, "the record shows otherwise: the only evidence of a prior conviction for contraband was the Class B Misdemeanor conviction for possession found in State's Exhibit 38."

The affidavit for the search warrant made no reference to convictions for contraband. Chitwood wrote about two convictions, and neither is a drug offense. "Affiant affirmed through NCIC/TCIC that the suspected party has been arrested

21

and convicted for, ASSAULT ON A PUBLIC SERVANT and UNLAWFUL CARRYING OF A WEAPON." SX 2 (emphasis in the original). The affidavit did not claim information from an informant about drug offenses, nor did it claim that he had been convicted of a drug offense. These statements do nothing to support a claim that the informant was unreliable.

Regarding prior convictions for contraband, in addition to State's Exhibit 38, cited by Appellant, there is also State's Exhibit 41. In the Second Motion to Adjudicate or Revoke in that case, (Angelina County case number 28,402), he was charged with violating a probation term by possessing cocaine and marijuana on several different dates.

> Failing to avoid injurious and vicious habits by using and possessing COCAINE on or about APRIL 4, 2010 AND AUGUST 19, 2010 AND NOVEMBER 8, 2010. by using and possessing MARlJUANA on or about AUGUST 19, 2010. SEPTEMBER 9, 2010 AND NOVEMBER 8, 2010.

Chitwood's affidavit did assert, based on informant's disclosures *and his own experience*, he expected to find paraphernalia and evidence of methamphetamine trafficking, scales, containers, records of sales, unpackaged contraband, money and devices for using the drugs. Scales and a small amount of money were found along with guns and quantities of methamphetamine, and marijuana, but none of the other items he expected. The fact that the expected

22

items were not found does not invalidate the entire warrant.  He did find guns in Ross' bedroom closet, whereas the informant said he had seen them on the bed. Appellant also asserts that there were problems about the affidavit's not foretelling where the drugs would found. (They were seized within the house, and that is all that is necessary.) The possession of drugs was not even material to this case. This case was limited to proving the possession of guns by a felon.

Appellant has not preserved error about the validity of the search warrant. He has not met his burden of proving the informant unreliable. His third issue is meritless and should be rejected.

## IV.  (Issue Four) Penal Code section 46.04 (a) (1) is constitutional.

The judge overruled Mr. Hagan' Second Amendment argument:

[S]pecifically that Penal Code Section 46.04 (a) is an unreasonable restraint on the defendant's right to keep and bear arms . . . [is] a personal right. And we submit that . . . barring weapons inside the defendant's home is an unreasonable restraint on the Second Amendment right. 5 RR 35.

A number of Texas cases have dealt with the constitutionality of the various earlier versions of this statute, and one 2001 case summarizes this body of law:

The court of criminal appeals upheld earlier versions of the statute. See *Lucas v. State,* 791 S.W.2d 35, 64 (Tex. Crim. App. 1989) (upholding statute because it protected general public from violent offenders); *McGuire v. State*, 537 S.W.2d 26, 28 (Tex. Crim. App. 1976) (upholding statute when legislature broadened restrictions by substituting "pistol, revolver or any other firearm capable of being

23

concealed upon the person" with "firearm"); *Webb v. State*, 439 S.W.2d 342, 343 (Tex. Crim. App. 1969)(Tex. Crim. App.) (holding that restriction against felons possessing "any pistol, revolver or firearm capable of being concealed" away from their homes did not infringe right of self-defense because felon could arm himself with any weapon not listed), (cert. denied, 396 U.S. 968, 24 L. Ed. 2d 434, 90 S. Ct. 450 (1969)).

The court in *Lucas* reasoned that the State had a rational basis for restricting the possession of firearms "because [violent offenders] have demonstrated a propensity toward violence." *Lucas*, 791 S.W.2d at 64. The statute was intended to keep violent offenders from arming themselves and moving about the community. *Id.* ; *Boyd v. State*, 899 S.W.2d 371, 373 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

Like the version of the statute examined in *Lucas*, the legislature had a rational basis to restrict the possession of firearms inside the home "with a view to prevent crime" under the current version. TEX. CONST. art. I, § 23. Wilson's contention that this restriction "serves no purpose in preventing crime" overlooks the fact that convicted felons are not necessarily outside their homes when they commit crimes. Felons are just as capable of committing crimes with firearms in or around their residences. Furthermore, the legislature could have rationally restricted convicted felons from possessing firearms anywhere for a five-year period to reduce the rate of recidivism. Wilson, therefore, has failed to demonstrate that section 46.04 unreasonably contravenes the right to bear arms guaranteed by the Texas Constitution.

*Wilson v. State*, 44 S.W.3d 602 (Tex. App.—Fort Worth 2001, pet. ref'd)

Appellant's argument centers, however, on the U.S. Constitution as opposed to the State Constitution, which provides as follows: "Every citizen shall have the right to keep and bear arms in the lawful defense of himself or the State; but the

Legislature shall have power, by law, to regulate the wearing of arms, with a view to prevent crime." Tex. Const. Art. I, § 23.

But the reasoning in the above Texas cases can be used to rebut a U.S. Constitutional challenge, also. Like Wilson and the other gun-toters above, Ross has failed to demonstrate that section 46.04 unreasonably contravenes the Constitutional right to bear arms.

The United States Supreme Court has approved a "longstanding prohibitions on the possession [] of firearms by felons. . . . *D.C. v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). The *Heller* case has been applied to Texas law in an unpublished case out of the Fifth District Court of Appeals on appeal from the Western District of Texas. *United States v. Powell*, 574 Fed. Appx. 390, 397 (5th Cir. 2014). Powell's argument was precisely the same as Ross'. The *Powell* Court opined that his argument was "precluded by our precedent." This finding was followed by a long string of citations, including *Heller*:

> See *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009); *United States v. Darrington*, 351 F.3d 632, 633-34 (5th Cir. 2003); see also *D.C.v. Heller*, 554 U.S., 626-27("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons [.]").

The Powell Court went on to conclude: "The Second Amendment does not preclude Powell's conviction of being a felon in possession of a firearm nor the sentence imposed pursuant to that conviction."

Dismissing the *Heller* decision, Appellant wants to rely on the case of *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010), which struck down the City of Chicago's prohibition against possession of any firearm by any citizen. *McDonald* does not conflict with *Heller*, as Penal Code section 46.04, which prohibits possession of firearms by felons who have been convicted of a violent act. None of the citizens who brought suit against the City of Chicago was described as a felon who had been convicted a violent act. When Mr. Ross committed the act of assaulting a public servant, he surrendered his right to arm himself until five years after he was released on parole. He couldn't arm himself while he resided in prison, nor could he arm himself, even in his own home, while he was on parole, nor for five years after he was released from parole. He had been released from parole fewer than five years before he was caught with firearms. 5 RR 16.

Appellant's argument, that Penal Code section 46.04 is unconstitutional, is without support and should be rejected.

## CONCLUSION

Appellant has not proved abuse of discretion in the trial court's refusing to allow Cinque Ross to withdraw his jury waiver, because Ross failed to meet his burden of proving "no adverse consequences."

Nor has he proved abuse of discretion the refusal to suppress the video of the voluntary custodial interrogation or the evidence that interrogation produced.

Appellant did not preserve error on the validity of the search warrant. Even if it had been preserved, the trial court committed no error in finding it valid and admitting evidence taken during the search.

The second amendment right to bear arms does not prevent a State from legislating that a felon convicted of a violent crime cannot possess a firearm for five years after he is released from parole.

## PRAYER

For the foregoing reasons, the State prays that the ruling be affirmed.

Respectfully Submitted,


/s/ *Zan Colson Brown*
Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

## CERTIFICATE OF SERVICE


I certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by certified mail, return receipt requested and/or facsimile to:


Lew Dunn
P.O. Box 2226
Longview, Texas 75606

this 11th day of May, 2015.


/s/ *Zan Colson Brown*
Zan Colson Brown
Assistant Criminal District Attorney


28

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with Texas Rules of Appellate Procedure regarding length of documents, in that exclusive of caption, statement regarding oral argument, table of contents, table of authorities, signature, certificate of service, certificate of compliance, it consists of 5,664 words.

/s/ *Zan Colson Brown*
Zan Colson Brown
Assistant Criminal District Attorney